IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>APPROXIMATELY $21,000 IN UNITED STATES CURRENCY SEIZED FROM DAVARIN BROWN ON SEPTEMBER 6, 2021 AT THE CHARLOTTE-DOUGLAS INTERNATIONAL AIRPORT | Civil No. 3:22-cv-00013 |

## **VERIFIED COMPLAINT FOR FORFEITURE IN REM**

NOW COMES the United States of America, Plaintiff herein, by and through Dena J. King, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

### INTRODUCTION

1. This is a civil action in rem against approximately $21,000 in United States currency seized from Davarin Brown on September 6, 2021 at Charlotte-Douglas International Airport (the "Currency").

2. During an interdiction operation, a drug detection dog positively alerted to the odor of narcotics on a checked suitcase belonging to Brown, and a consensual search of Brown's suitcase revealed $21,000 hidden inside the jean pockets. The Currency was later placed into an independent blind lineup of scent boxes, with another positive K9 alert to the scent box containing the Currency.

3. Davarin Brown is a convicted felon with a history of drug trafficking who has been unemployed since 2019. Brown could not explain the source of the Currency,

1

but (a) confirmed it was not withdrawn from a bank, and (b) his claim that he had won a $5,000 to $10,000 portion of the Currency from Harrah's Casino in New Orleans was—according to Harrah's response to law enforcements inquiry—false.

4. Further demonstrating that Brown lacks any source of legitimate income or legitimate source for the Currency is the fact that he fraudulently applied for an U.S. Small Business Administration ("SBA") Economic Injury Disaster Loan due to the COVID-19 pandemic—representing that he owned a clothing and apparel employing ten people with $93,462 in gross revenue and a cost of goods sold of $18,542 in the year prior to the pandemic—to obtain a $10,000 advance wired to his bank account, which Brown immediately withdrew and never returned after his loan application was denied.

5. Thus, the Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

6. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

8. Venue is proper pursuant to 28 U.S.C. § 1395 because the Currency was seized in the Western District of North Carolina.

9. The Currency has been seized and is now within the Western District of North Carolina.

10. Based on the following facts, verified by Department of Homeland Security, Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Stephen Brown, this action seeks the forfeiture of all right, title, and interest in the Currency.

## FACTS GIVING RISE TO FORFEITURE

*The interdiction*

11. On September 6, 2021, Davarin Brown[1] was traveling from Charlotte, North Carolina to Los Angeles, California on American Airlines flight 1364.

12. That day, law enforcement at the Charlotte airport were conducting a narcotics interdiction operation and, among other things, observing luggage destined for Los Angeles, a known drug source location.

---

[1] The primary law enforcement officer in this seizure is TFO Steve Brown. Given the identical last names, the Complaint generally refers to Davarin Brown by his full name, and TFO Brown by including his title, however, any references to simply "Brown" in the Complaint are to Davarin Brown.

13. The interdiction operation utilized K9 Cali, a properly trained and certified narcotics detection canine.

14. K9 Cali was deployed to conduct an open-air sniff of two luggage carts at Gate C17, the gate for AA flight 1364 to Los Angeles.

15. K9 Cali sniffed the luggage on the carts, and then positively alerted to the odor of narcotics on a green suitcase. K9 Cali and the suitcase are depicted below:



16. The suitcase's checked luggage tag indicated that it belonged to Davarin Brown.

17. The suitcase was detained and law enforcement brought it to the boarding area to attempt to locate Davarin Brown.

18. The gate attendant paged Davarin Brown over the intercom, who then approached gate's service desk and identified himself.

19. When asked if the suitcase was his, Davarin Brown indicated it was.

20. TFO Brown then asked Davarin Brown if he could speak with him about the suitcase, to which he agreed.

21. As they were walking to a nearby, less-occupied gate area for privacy, TFO Brown asked Davarin Brown about the purpose of his trip to Los Angeles. Brown said he was traveling to Los Angeles to visit family, and that he had moved to Charlotte a week prior to the seizure.

22. TFO Brown informed Davarin Brown of the positive K9 alert to his suitcase and asked Brown for consent to search his suitcase.

23. Davarin Brown granted consent to search his suitcase.

24. TFO Brown asked what was inside of the suitcase, and Davarin Brown replied "clothes, shoes..." When asked if there was anything else other than clothes and shoes, Brown replied "*toothbrush, toothpaste, stuff like that."

25. TFO Brown opened the suitcase and immediately observed three large unused rolls of clear packing tape:



26. Persons shipping packages containing narcotics from source locations,

such as California, to the East Coast often use a large amount of taping, especially along the package seams, to prevent the escape of narcotics odors.[2]

27. TFO Brown continued to search the suitcase and felt items in the pockets of jeans.

28. TFO Brown asked Davarin Brown what was in the pockets, and Brown stated there was cash inside the pockets.

29. The Currency hidden among the clothes was rubber-banded and in multiple denominations, consistent with that involved in street level narcotics trafficking:



30. TFO Brown asked how much Davarin Brown was traveling with and Brown replied, "about $15,000."

31. TFO Brown asked Davarin Brown what he did for a living, who replied

---

[2] Further, rolls of packing tape are an odd item for an individual to carry in the normal course of travel.

that he went to casinos and gambled. Davarin Brown further stated that he was unemployed at the time of the seizure.

32. TFO Cerdan continued the search of the suitcase while TFO Brown continued speak with Davarin Brown.

33. TFO Brown asked Brown if the money came from a bank, and he replied that the money did not come out of a bank, but it was money that he had saved up.

34. Davarin Brown also stated that he had been collecting unemployment from the state of Louisiana because of the pandemic.

35. TFO Brown asked Brown if he had ever applied for any Small Business Administration loans or Economic Injury Disaster loans due to the pandemic.

36. Davarin Brown falsely replied, "no."

37. When asked if he had ever been arrested or charged with a crime before, Davarin Brown replied "convicted felon with a firearm." Then, when asked regarding any narcotics offenses, Brown noted that in 2018 he had a "distribution" charge.

38. TFO Brown asked Davarin Brown where he planned to stay in Los Angeles and how long he planned to be there. Davarin Brown replied that he had booked a Marriott hotel room and planned to return on Wednesday (two days after the Monday of Brown's initial flight).

39. TFO Brown informed Davarin Brown the Currency was being seized and provided Brown with a seizure receipt. TFO Brown explained the seizure and notice process.

40. During this, Brown again mentioned that he also gambled and stated he

won "maybe like $5,000 to $10,000 at Harrah's Casino in New Orleans" that summer playing craps, and that he was usually in the casino for hours at a time.

41. When asked whether he wanted his bag placed back on the plane, Davarin Brown declined, stating he was no longer going to Los Angeles and leaving the area.

42. TFO Brown explained to Davarin Brown that, while he did not have to, if he wanted to show the Currency was not connected to drug trafficking, he could consent to a search of his phone, as the absence of related text messages, photographs, etc... would help dispel TFO Brown's suspicions that Davarin Brown was involved in drug trafficking. Brown declined consent.

43. The Currency was then placed in a blind lineup and presented to K9 Cali, who alerted to the odor of narcotics in the scent box which contained the Currency.

44. The Currency was later transported to Loomis, where it was counted and found to total $21,000,[3] consisting of 76 hundred-dollar bills, 3 fifty-dollar bills, 662 twenty-dollar bills, and 1 ten-dollar bill:

---

[3] Either Davarin Brown intentionally understated the amount of cash he was traveling with to law enforcement, or he did not know the amount of currency he was traveling with.



45. The Currency was deposited into an account established to hold seized funds.

### *The lack of any legitimate source for the Currency and Davarin Brown's SBA loan fraud*

46. A wage record inquiry in Louisiana reveals that Davarin Brown's last reported legitimate income was in the third quarter of 2019, and at a wage rate that makes it highly improbable that Brown saved $21,000 in legitimately earned money (specifically, the inquiry indicates that Davarin Brown earned a total of $437 and $5,019 in legitimate income in 2018 and 2019 respectively).

47. Similarly, Davarin Brown's story that he won $5,000 to $10,000 of the Currency at Harrah's Casino in New Orleans is belied by the fact that Harrah's, in response to a subpoena request for any gambling earnings paid to Davarin Brown,

had no record of Brown ever winning any money at the casino (or Brown himself) in their database.

48. Further, Brown's resort to SBA loan fraud in the summer of 2020 is indicative of his lack of legitimate income and a lack of a legitimate source of the Currency.

49. On June 26, 2020, Davarin Brown applied for an SBA Economic Injury Disaster Loan (EIDL) due to the COVID-19 pandemic, and requested a $10,000 advance of funds to be wired into his Capital One bank account, providing his account and routing numbers.

50. In Brown's application, he reported that he was the "owner, guarantor, and signer" for a retail business for "Clothing & Apparel" with ten employees under the business name of "Davarin Brown."

51. Davarin Brown listed the primary business address as the same residential address on his Louisiana license.

52. In the SBA EIDL application, Davarin Brown reported that his gross revenues for the twelve months prior to the COVID-19 pandemic were $93,462, with a cost of goods sold of $18,542.

53. Davarin Brown certified "under penalty of perjury" that his SBA EIDL application was "true and correct."

54. On June 29, 2020, the requested $10,000 advance was approved and wired to Brown's Capital One account.

55. Brown immediately withdrew the $10,00 in cash the next day, June 30,

10

Case 3:22-cv-00013-MOC-DCK   Document 1   Filed 01/10/22   Page 10 of 14

2020.

56. A search of the Louisiana Secretary of State's database indicates no businesses associated with Davarin Brown.

57. Davarin Brown's EIDL application was denied by letter dated January 17, 2021.

*Davarin Brown's criminal history*

58. In 2019, Davarin Brown was charged with fraud/illegal use of a credit card in Kansas, a charge on which he failed to appear and remains wanted in that state.

59. In January 2020, Davarin Brown was charged with transactions involving proceeds from drug offenses, possession of drug paraphernalia, and manufacture/distribution of marijuana in Houma, Louisiana.

60. Davarin Brown pled guilty in September 2020 and was sentenced to five years. This sentence was suspended and Brown was placed on probation for two years.

61. In June 2021, Brown was charged with possession of a firearm by a convicted felon in Houma, Louisiana.

**FIRST CLAIM FOR RELIEF – THE CURRENCY**
**(21 U.S.C § 881(a)(6))**

62. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 61 above as if fully set forth herein.

63. The Currency is subject to forfeiture pursuant to 21 U.S.C. § 881 (a)(6) because it constitutes money furnished or intended to be furnished by any person in

exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

64. Upon information and belief, the following persons may claim an interest in the Currency seized on September 6, 2021:

Davarin Brown
12308 Headquarters Farm Rd.
Charlotte, NC 28262

With courtesy copy to:

Leslie M. Sammis
Sammis Law Firm P.A.
1005 N Marion St.
Tampa, FL 33602

## CONCLUSION AND PRAYER FOR RELIEF

65. By virtue of the foregoing, all right, title, and interest in the Currency vested in the United States at the time of the commissions of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. A warrant for the arrest of the Currency be issued;

2. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

3. Judgment be entered declaring the Currency to be condemned and forfeited to the United States of America for disposition according to law; and

4. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of

this action, including but not limited to the expenses of maintenance and protection of the Currency as required by 28 U.S.C. § 1921.

Respectfully submitted this 10th day of January, 2022.

>DENA J. KING
>UNITED STATES ATTORNEY
>
>/s/ Seth Johnson
>J. Seth Johnson
>NC Bar No. 53217
>Assistant United States Attorney
>Suite 1650, Carillon Building
>227 West Trade Street
>Charlotte, North Carolina 28202
>Telephone: (704) 338-3159
>Email: seth.johnson@usdoj.gov

## VERIFICATION

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the 7 day of January, 2022.

_____
Task Force Officer Stephen Brown
Department of Homeland Security,
Homeland Security Investigations